Bland, Chancellor.
Upon a careful *674 consideration of the several legislative enactments in relation to the ages at which females are to be endowed with certain capacities, it will be seen, that it has been merely declared, that a female shall be accounted of full age to receive her estate at the age of eighteen, or day of marriage, which shall first happen; (a) that on receiving her estate after that age she may execute a release therefor to her guardian; (b) and that no will shall be good and effectual to pass any interest in land unless the person making the same, if a female, be of the full age of eighteen years, (c) And following out those principles upon which a capacity to receive, hold, and dispose by will of their estates at the age of eighteen, was conferred upon females, the jurisdiction of the courts, clothed with the common and ordinary powers in relation to infants, has been accordingly limited by declaring, that the Orphans Court should only have authority to appoint a guardian to a female infant until the age of'eighteen, or marriage; and that such guardian should then account and deliver up all the property in his possession to such female. (d)
But there is nothing in any of those legislative enactments conferring such qualified capacities upon females, or by which the jurisdiction; of the Orphans Courts has been so limited which can be construed to have altered the general rule of the common law as to age; or from which females can be construed as of full age at eighteen in any other respect, or for any other purpose whatever where the legal capacity has, by the common law, been limited to the full age of twenty-one years, (e) And since it has been expressly declared, in immediate connexion with this matter, that nothing contained in the general act, regulating the powers and duties of the Orphans Court, should be construed to affect the general superintending power exercised by the Court of Chancery with respect to trust; (f) and since it has also been expressly enacted, that a sale of the real estate, as prayed for in this instance, may be decreed in order to save the personal, with the consent of all parties of full age, and the actual guardian of minors; (g) it necessarily follows, that this court alone has the power to appoint *675 a guardian for these minors, who are between the ages of eighteen and twenty-one years, in order to enable all parties to obtain the relief they seek, or which may be beneficial to them. (h)
Therefore it is Ordered, that Sarah C. Waring be, and she is hereby appointed guardian of the said infant defendants Susan Waring and Grace Waring, with full power and authority to defend and protect the rights and interests of the said infants; and to give any consent that may be deemed neeessary and proper for their advantage, in all respects whatever.
Immediately after which, the adult defendants, and the actual guardian of all the infant defendants, appointed by this or by the Orphans Court, put in their answers, and consented that the real estate should be sold as prayed. Whereupon the case was submitted without argument.
21th September, 1830.
Bland, Chancellor.
The general rule is, that the personal estate is the natural fund, and must be first applied to the payment of the debts of the deceased owner, unless he had in some legal and clear manner expressed an intention, that a different disposition should be made of his property, (i) But the legislature has authorized the Court of Chancery to depart from this rule, upon the application, and with the consent of those to whom the realty has descended; and to decree a sale of it, in order to save the personalty, (j) It is with a view to the exercise of this authority, that this bill has been addressed to this court. As regards the heirs, the next of kin, and the widow, who alone are parties to this suit, it may be viewed merely as a proceeding to have the assets marshalled for their benefit. But the object of having them so marshalled is, so to shift the pressure of the bur-then of the debts of the deceased, as to save the personalty for the benefit of these next of kin, who are also the heirs of the deceased. As no one can institute a suit without having some interest in it; so, this is a kind of suit which can only be instituted by one, who as heir, devisee or purchaser, has an interest in the real estate proposed to be sold; and also, an interest in that personal estate which it is proposed to have so saved; or, in other words, a party to a suit of this kind, must have an interest in both the real and the personal estate.
*676 In this, as well as in all other proceedings which may be brought before the court, in relation to the right of property,' it will be proper, however, constantly to bear in mind, that there are certain constitutional limitations, beyond which, the power of the legislative or judicial department cannot be in any manner extended. Neither the legislature nor the court can take property from one citizen and give it to another; and therefore, no part of this real estate can be sold, and taken from these heirs and applied to the benefit of any one, other than these heirs, to the extent of their interest in the personalty, and as the means of saving it. Because the application of the proceeds of the sale of the realty, which belongs to them, to save any personal property from the claims of creditors, which would not, when so saved, belong to them, would be, in effect, to take their property to save the property of others; which cannot be done in any way, or under any form of proceeding whatever. In this instance, the intestate having left children, the widow would be entitled to only one-third of his personal estate left after the payment of all his debts; and consequently, in so far as the real estate which has descended to these heirs, may be applied to pay those debts, in order to save the personalty, these heirs do, in fact, thereby become the purchasers of it, as against all but creditors; and the widow can have no claim to any part of it; since the awarding to her any portion of the personalty so saved, would be, in effect, to take the property of the heirs and to give it to her; which cannot be done. She is, however, justly entitled to dower out of the real estate sold; or to an equivalent allowance from the proceeds of the sale ; recollecting always, that by coming in, and making claim to an equivalent allowance out of the proceeds of sale, she thereby, tacitly admits the truth of the allegations of the bill; and therefore, must, on that ground also, be precluded from any portion of the personalty thus saved by the proceeds of the sale of the realty.
But the legislature is, by a positive constitutional provision, restrained from passing any law impairing the obligation of contracts ; and it is believed, that no court of justice has hitherto ventured to impair the obligation of a contract, or to throw any impediment in the way of a creditor who asked to have his claim enforced against his debtor. This act of assembly must therefore, be so construed, and the authority which has been conferred by it, upon this court, in cases of this kind, must be so applied, as to leave to the creditors of this deceased debtor, no cause to complain. *677 They must be notified, as far as practicable, of this proceeding, and allowed to bring in their claims; and, upon establishing them, to obtain satisfaction. For, as the avowed object of this suit is to save the personalty from their grasp, by paying them, it must be considered as in effect, a creditor’s suit, instituted for their satisfaction ; so, that the interests of these parties may be thereby promoted ; and therefore, no marshalling of the assets, thus liable to the claims of creditors, can be made in any manner whatever, to their prejudice, however advantageous it may be to these parties.
The proceeds of the sale about to be ordered, might, if it could be done with proper security, be placed in the hands of the administrator of the deceased, to meet, in due course of administration, the demands upon that personal property in his hands, which they are intended to relieve and save from the claims of creditors. But an administrator or executor only gives bond for the faithful administration of the personalty, as left by the deceased, which Inay come to his hands, and nothing else ; and therefore, that bond could not be considered as a security for any proceeds of the sale of the realty which this court might direct to be placed in his hands, (k) And as this court could not demand any additional security from the administrator of the deceased, even if he were a party to this suit, it must itself call in the creditors of the deceased, and distribute the proceeds of sale among them as usual, in a creditor’s suit originally instituted by a creditor in behalf of himself and all other creditors.
Decreed, that the tracts of land lying in Anne Arundel county, called Schelde’s Chance, and Lot JVb, 57, whereof Henry Waring died seized, be sold, and that Thomas F. Bowie be, and he is hereby appointed trustee to make the said sale, &c. &c.; to sell the said land and premises at public sale to the highest bidder on a credit of six months, the purchaser to give bond with surety to be approved by the trustee for the payment of the purchase''money, with interest from the day of sale, &c. &c. And the said trustee shall, at the time of advertising the said property for sale, give notice to the creditors of Henry Waring, deceased, to file the *678 vouchers of their claims in the Chancery office within four months from the day of sale.
Under this decree the trustee sold the property as directed, which sale was finally ratified on the 15th of December, 1831. After which, the widow was allowed one-eighth of the net proceeds of sale in lieu of her dower; and no ■ creditor having come in as notified, the residue of the proceeds of sale were afterwards, on the application and with the consent of all parties, ordered to be paid over to the intestate’s surviving administrator to be by him administered in due course. And the case was thus closed here.

 1715, ch. 39, s. 15; 1829, ch. 216, s. 5, 6.

 1829, ch. 216, s. 7. And since they have been endowed with a capacity to execute powers of attorney for such purposes, 1831, ch. 305, s. 5.

 1798, ch. 101, sub ch. 1, s. 3.

 1798, ch. 101, sub ch. 12, s. 1 and 15; 1829, ch. 216, s. 5, 6.

 Davis v. Jacquin, 5 H. & J. 100.

 1798, ch. 101, sub ch. 12, s. 16.

 1818, ch. 193, s. 8; Pue v. Dorsey, 1 Bland, 140, note; Partridge v. Dorsey, 3 H. & J. 305.

 Corrie’s Case, ante 488.

 Tait v. Northwick, 4 Ves. 816; Hancox v. Abbey, 11 Ves. 186.

J) 1818, ch. 193, s. 8; 1819, ch. 183.

 IS31, ch. 315, s. 10 and 11 — as to sales of real estate by an executor, authorized to sell by his testator; and that the bond of an executor or guardian shall be answerable for the proceeds df the sales of the real estate of the testator or ward, which may come into his possession.